UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SHANE W.,[1]

                                 Plaintiff

-vs-

COMMISSIONER OF SOCIAL
SECURITY,

                                   Defendant.
_____

DECISION and ORDER

1:23-CV-01313-CJS

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner" or "Defendant") which denied the application of Plaintiff for Supplemental Security Income ("SSI") benefits.   Plaintiff maintains that such determination is affected by errors of law and not supported by substantial evidence, and, in particular, that when assessing the opinions of his mental health therapist, Laquisha Craig LMHC ("Craig"), the Administrative Law Judge ("ALJ") "did not evaluate [Craig's] opinion pursuant to the regulatory factors" and "also improperly cherry-picked and mischaracterized the record." ECF No. 9-1 at p. 16. Now before the Court are Plaintiff's motion for judgment on the pleadings (ECF No. 9), and Defendant's cross-motion for the same relief (ECF No. 11).   For reasons discussed below, Plaintiff's application is denied, Defendant's application is granted, and this action is dismissed.

_____

[1]  The Court's Standing Order issued on November 18, 2020, indicates in pertinent part that, "[e]ffective immediately, in opinions filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

STANDARDS OF LAW

The Commissioner decides applications for disability benefits using a five-step sequential evaluation process:

> A five-step sequential analysis is used to evaluate disability claims. *See* 20 C.F.R. §§ 404.1520, 416.920.   First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a severe impairment[2] which significantly limits his physical or mental ability to do basic work activities.[3] If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in the regulations [or medically equals a listed impairment].   Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity [("RFC")] to perform his past work.[4] Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.   The claimant bears the burden of proof as to the first four steps, while the Commissioner bears the burden at step five.[5]

---

[2] "At step two, the ALJ must determine whether the claimant has a 'severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R.] § 404.1509, or a combination of impairments that is severe and meets the duration requirement.' *Id*. If not, the claimant is deemed not disabled, and the inquiry ends." *Koch v. Colvin*, 570 F. App'x 99, 101 (2d Cir. 2014); *see also*, 20 C.F.R. § 404.1520(a)(4)(ii) ("At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.").

[3] The Commissioner's Regulations define basic work-related activities as follows: "Basic work activities. When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include— (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting."   20 C.F.R. § 404.1522 (West 2023).

[4] Residual functional capacity "is what the claimant can still do despite the limitations imposed by his impairment." *Bushey v. Berryhill*, 739 F. App'x 668, 670–71 (2d Cir. 2018) (citations omitted); *see also*, 1996 WL 374184, Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996).

[5] "The Commissioner's burden at step five is to show the existence of possible employment for an individual with the RFC determined by the ALJ in the fourth step of the sequential analysis." *Smith v. Berryhill*, 740 F. App'x 721, 726–27 (2d Cir. 2018) (citation omitted). The ALJ typically does this either by resorting to the medical vocational "grids" or, where the claimant has a non-exertional impairment, by taking testimony from a vocational expert [("VE")]. *See, Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986)

*Colvin v. Berryhill*, 734 F. App'x 756, 758 (2d Cir. 2018) (citations and internal quotation marks omitted).

An unsuccessful claimant may bring an action in federal district court to challenge the Commissioner's denial of the disability claim.  In such an action, "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C.A. § 405(g) (West).  Further, Section 405(g) states, in relevant part, that "[t]he findings of the Commissioner of Social security as to any fact, if supported by substantial evidence, shall be conclusive."

The issue to be determined by the court is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *see also, Barnaby v. Berryhill*, 773 F. App'x 642, 643 (2d Cir. 2019) ("[We] will uphold the decision if it is supported by substantial evidence and the correct legal standards were applied.") (citing *Zabala v. Astrue*, 595 F.3d 402, 408 (2d Cir. 2010) and *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).").

"First, the [c]ourt reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standard." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d

---

("[T]he mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines. A more appropriate approach is that when a claimant's nonexertional impairments significantly diminish his ability to work—over and above any incapacity caused solely from exertional limitations—so that he is unable to perform the full range of employment indicated by the medical vocational guidelines, then the Secretary must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform.").

Cir. 1999); *see also, Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) ("[W]here an error of law has been made that might have affected the disposition of the case, this court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the [administrative law judge] [("]ALJ[)"]. Failure to apply the correct legal standards is grounds for reversal.") (citation omitted).

If the Commissioner applied the correct legal standards, the court next "examines the record to determine if the Commissioner's conclusions are supported by substantial evidence. *Tejada v. Apfel*, 167 F.3d at 773.   Substantial evidence is defined as "more than a mere scintilla.   It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (citation omitted).

> The substantial evidence standard is a very deferential standard of review—even more so than the 'clearly erroneous' standard, and the Commissioner's findings of fact must be upheld unless a reasonable factfinder would have to conclude otherwise." *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original).

*Banyai v. Berryhill*, 767 F. App'x 176, 177 (2d Cir. 2019), as amended (Apr. 30, 2019) (internal quotation marks omitted); *see also, Snyder v. Comm'r of Soc. Sec.*, No. 22-277-CV, 2023 WL 1943108, at *1 (2d Cir. Feb. 13, 2023) ("While the substantial evidence standard requires we find more than a mere scintilla of support for the Commissioner's decision, it is still a very deferential standard of review requiring us to uphold the Commissioner's findings unless a reasonable factfinder would *have to conclude otherwise*.") (emphasis in original; citations and internal quotation marks omitted); *Schillo*

*v. Kijakazi*, 31 F.4th 64, 69 (2d Cir. 2022) ("We may vacate the agency's disability determination only if it is based on legal error or unsupported by 'substantial evidence'— that is, if no reasonable factfinder could have reached the same conclusion as the ALJ.").

In applying the substantial-evidence standard, a court is not permitted to re-weigh the evidence. *See, Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."); *see also, Riordan v. Barnhart*, No. 06 CIV 4773 AKH, 2007 WL 1406649, at *4 (S.D.N.Y. May 8, 2007) ("The court does not engage in a *de novo* determination of whether or not the claimant is disabled, but instead determines whether correct legal standards were applied and whether substantial evidence supports the decision of the Commissioner.") (citations omitted). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks omitted). "In other words, this Court must afford the Commissioner's determination considerable deference, and 'may not substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review.'" *Melia v. Colvin*, No. 1:14-CV-00226 MAD, 2015 WL 4041742, at *2 (N.D.N.Y. July 1, 2015) (quoting *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir.1984)).

When considering whether a particular finding or decision is supported by substantial evidence, a court may not rely on *post hoc* rationalizations offered by the

Commissioner, but may rely on evidence that was evidently considered by the ALJ even if it was not expressly mentioned in the administrative decision. *See, Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) ("When, as here, the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability. *E.g., Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir.1982). In *Berry*, we noted that, although we would remand for further findings or a clearer explanation where we could not fathom the ALJ's rationale "in relation to evidence in the record," we would not remand where "we were able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence." *Id*. *See also Miles v. Harris*, 645 F.2d 122, 124 (2d Cir.1981) ("Notwithstanding the apparent inconsistency between the reports of [two doctors], we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony ...."); *Banyai v. Berryhill*, 767 F. App'x at 177 ("An ALJ is not required to discuss every piece of evidence submitted, and the failure to cite specific evidence does not indicate that such evidence was not considered."); *see also, Loni S. v. Comm'r of Soc. Sec.*, No. 3:22-CV-805 (CFH), 2023 WL 4195887, at *19 (N.D.N.Y. June 27, 2023) ("The Court is required to look at the entire ALJ's decision when reviewing for substantial evidence. *See John L. M. v. Kijakazi*, No. 5:21-CV-368 (BKS/TWD), 2022 WL 3500187, at *2 (N.D.N.Y. Aug. 18, 2022) (citations omitted) ('[W]hile a reviewing court may not affirm the Commissioner's decision based on an impermissible *post-hoc* rationalization, it may affirm where the ALJ's consideration of

the relevant factors can be gleaned from the ALJ's decision as a whole.').").

FACTUAL and PROCEDURAL BACKGROUND

The reader is presumed to be familiar with the factual and procedural history of this action, and, consequently, the Court will refer to the record only as necessary to rule on the alleged errors identified by Plaintiff.    Briefly, on October 13, 2017, Plaintiff applied for SSI benefits claiming to have become disabled on February 1, 2015, due to both physical and mental impairments, but on August 30, 2023, the ALJ issued a decision finding that Plaintiff was not disabled at any time between the application date and the date of the decision.    The ALJ followed the applicable five-step sequential evaluation and found, in pertinent part, that Plaintiff's only severe impairments were mental impairments ("bipolar II disorder, depressive disorder, anxiety disorder, anti-social personality disorder and impulse control disorder) , and that he had the RFC to perform a full range of work at all exertional levels with the following non-exertional limitations: "[T]he claimant can perform simple routine tasks, not at a production-level pace and make simple, work-related decisions.   The claimant can have occasional interaction with supervisors and coworkers [and] brief superficial contact with [the] general public.    The claimant can have occasional changes in the work site or routine." Tr. 1069.

The ALJ indicated that in making this RFC finding, he considered Plaintiff's statements about his symptoms and evaluated "the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 416.920c." Tr. 1069.

In that regard, the ALJ included a lengthy recitation of Plaintiff's statements about

7

the effects of his mental impairments on his ability to work, in which Plaintiff, who has

consistently been in and out of prison his entire adult life, essentially indicated that he is

unable to focus on work, make good choices, or get along with other people.    For

example, the ALJ stated:

> [T]he claimant reported difficulties with memory, paying attention, finishing
> what he starts, getting along with others, with concentration and dealing
> with stress and changes in schedule (Exhibit B3E). At the prior hearing
> before the undersigned in November 2019, he alleged that he is unable to
> work due to short term memory problems, an inability to relate to people
> and "sometimes" has trouble concentrating.   Additionally, he reported that
> he has trouble making decisions, noting his "rap sheet is 41 pages long."
>
> ***
>
> When questioned by the representative, the claimant discussed what
> typically happens when he tries to return to work, for example when he
> tried to work with a friend installing drywall in February 2023, citing Exhibit
> B17F, p. 229, and after a week or so he starts having issues, he is
> depressed or can't make it for a week or gets frustrated and paces back
> and forth for ten to fifteen minutes. He acknowledged that he gets distracted
> by unrelated tasks, both during work attempts and at home, where he has
> become so frustrated that he has punched a wall and broke his hand. He
> also reported that he has threatened co-workers, and has been in hundreds
> of fights with other inmates and deputies, including [while working at] jobs
> in the jail. He reported that his most recent arrest was in January 2022,
> when he relapsed on crack cocaine (this was the date of last use), and was
> manic, despite compliance with medications and counseling and drove a
> car through the doors of a CVS. He testified that he still has difficulties with
> sleep and his sleep schedule, noting that some days he stays up, gets
> depressed, and feels like relapsing but he remains at Endeavor and gets
> help handling money and with other issues.

Tr. 1070-1071*; see also*, Tr. 1067 ("In the claimant's self-authored function report, he

stated that he has the ability to follow oral and written directions but noted that sometimes

he has difficulty remembering things."); *Id*. ("The claimant reported that he 'does not get

along with people' and that he has been fired for his inability to get along with others."); 1068 ("The claimant alleges that his impairments limit his ability to pay attention."); *Id.* ("The claimant stated that stress or change causes him to pace and yell[.]"); 1072 ("The claimant reported a history of struggling to control his anger and impulses[.]"); *Id.* ("The claimant stated that he blacks out when he experiences excessive nervousness[.]"); 1073 ("[Claimant] stated: 'I have to do something for money.   But I can't hold a job longer than a week.   . . . I get aggravated and only certain [people] put up with my bullshit.'").

However, following a lengthy and detailed discussion of the treatment notes and evidence concerning Plaintiff's activities of daily living, the ALJ found Plaintiff's statements were not consistent with the record as a whole, and did not support limitations greater than those contained in the RFC finding, stating in pertinent part:

> To reiterate, as for the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent with a finding of greater limitation. The claimant has described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. The claimant is able to maintain his personal hygiene, cooks, cleans, maintains a relationship with his girlfriend, cares for multiple pets and participates in social media. The claimant is able to work on cars, and his house and rides ATVs in his spare time. The medical evidence of record does not depict a completely disabled individual. Although the claimant has received treatment for the allegedly disabling impairments, that treatment has been essentially routine and/or conservative in nature. The record reveals no psychiatric hospitalizations, and the claimant has been stable with seeing a psychiatrist once every month and sees his counselor every two weeks. The claimant takes medication for his impairments, but he maintains activities of daily living. Lastly, the claimant's record state that the claimant stopped working for reasons besides his mental impairments. Although his incarceration and criminal history apparently stems from his poor impulse control, assault charges, etc., the claimant acknowledges that he stopped working for

reasons besides impairment. (Exhibit B2E, p. 3).

Tr. 1074.

The ALJ further found that the medical opinion evidence did not support greater limitations than those contained in the RFC finding.   In this regard, the ALJ discussed the hearing testimony of medical expert James F. Wargel, Ph.D. ("Wargel"), and the reports by consultative examiner Susan Santarpia, Ph.D. ("Santarpia"), and agency review physician G. Kleinerman, M.D. ("Kleinerman").   The ALJ found those opinions persuasive, stating, in pertinent part, as follows:

> Dr. Wargel noted that the claimant's record during the period at issue generally reflected stable mental functioning, when compliant with appropriate medications and fluctuating functioning arising when he misused medications or substance abuse. There was extensive discussion between the claimant's representative and Dr. Wargel about the claimant's reports of homicidal ideation and criminal conduct, with Dr. Wargel noting the distinction that exists between the claimant's history of exhibiting antisocial or criminal behavior and what is attributable to mental illness itself. The claimant's representative repeatedly asserted that the claimant's mental illnesses met the criteria of 12.04 (C), however, Dr. Wargel was adamant that the claimant's diagnoses were not serious or persistent and did not meet the listing, with moderate limitations in the B criteria and that there w[ere] no issues with marginal adjustment.
>
> ***
>
> [Wargel] gave testimony that the claimant had no more than moderate limitations in the B criteria[.]   . . .   The undersigned finds this opinion persuasive as Dr. Wargel had the benefit of reviewing the entire medical history and it is consistent with the evidence record as a whole. This opinion is also consistent with the opinions of Dr. Santarpia and Dr. Kleinerman, discussed below, as all of these opinions are supported by the record, consistent with one another, and offered by a medical expert, medical consultant, and a consultative examiner, all of whom have program knowledge regarding the requirements for proving disability before the Social Security Administration.

10

***

[T]he January 2018 opinion of psychiatric consultative examiner, Dr. Santarpia, exhibited at B8F, is [also] persuasive. Dr. Santarpia is an expert with program knowledge and her opinion is consistent with the claimant's mental status examination findings and the overall evidence of record. The claimant presented [to Santarpia] with a flat affect, exhibited poor eye contact, and reported depressive and anxiety-related symptomatology. However, he had intact attention, concentrations and memory, reported good activities of daily living, and was cooperative with an adequate manner of relating. Dr. Santarpia's opinion was consistent with her examination findings and the evidence of record. The claimant experiences limitation due to his mental impairments but no more than a moderate level of limitation, for the reasons explained above.

Likewise, the February 16, 2018 opinion of DDS psychiatric medical consultant, Dr. Kleinerman, exhibited at B1A and B7F, is also persuasive. Dr. Kleinerman opined that the claimant had mild to moderate limitations in the "paragraph B" criteria (Exhibit B1A, p. 6). Dr. Kleinerman's opinion is consistent with the evidence of record, which tends to show that the claimant's mental status examinations are generally unremarkable and his activities of daily living confirm that the claimant has no more than a moderate limitation overall.

Tr. 1070, 1075, 1076.

On the other hand, the ALJ found the opinion of Plaintiff's treating licensed mental health counselor, Ms. Craig, to be less persuasive.   Craig declined to complete most of the evaluation form provided to her, but indicated that Plaintiff would be "seriously limited"[6] in "interacting appropriately with the general public" and "maintaining socially appropriate behavior." Tr. 1360.   When asked to state the findings that supported those opinions, Craig wrote: "Client has a history of antisocial and aggressive behavior in the

---

[6] The form used by Craig defined "seriously limited" as follows; "Seriously limited means your patient has noticeable difficulty (e.g., distracted from job activity) from 11 to 20 percent of the workday or work week." Tr. 1359.

11

community." Tr. 1360.   The ALJ found Craig's opinion less persuasive than the other medical opinions, stating:

> In March 2020, the claimant's counselor Laquisha Craig, LMHC, from Endeavors Health Services, submitted a Mental Medical Source Statement, exhibited at B14F, noting his treatment there since 2017, his various diagnoses and prescribed list of medications (Exhibit B14F). <u>She declined to complete the check box assessments of the claimant's mental abilities and aptitudes needed to do unskilled, semiskilled and skilled work</u> but did suggest that he would be seriously limited in his abilities to interact appropriately with the general public and maintain socially appropriate behavior based upon his history of antisocial and aggressive behavior in the community (*Id*. a[t] 6). <u>This opinion is of limited persuasion</u>. While provider Craig does comment on the claimant's ability to interact with the public, which is <u>somewhat consistent</u> with the psychiatric records discussed above, the opinion does not address the remaining aptitudes so it provides little by way of vocational or functional analysis. Moreover, as noted above, the correlating clinical mental status examinations from Endeavors <u>do not support</u> serious limitations, as he presents with grossly normal psychiatric findings upon examinations aside from fluctuating mood and affect. Finally, the opinion is <u>not consistent</u> with the opinion of the ME Dr. Wargel or other the other opinions in the file.

Tr. 1075 (emphasis added).

In this action, Plaintiff maintains that remand is required since the ALJ failed to properly evaluate Craig's opinion, for reasons discussed in more detail below.   Plaintiff asserts that these errors were harmful, since a proper evaluation of Craig's opinion might have resulted in a finding of disability:

> Ms. Craig opined that Plaintiff is seriously limited in several areas involving social interaction, including interacting with the general public and in maintaining socially appropriate behavior.  These opined limitations, if accepted, may support more than a 'moderate' limitation in the functional area of interacting with others, and they may support greater mental residual functional capacity limitations.

ECF No. 9-1 at pp. 23-24.

Defendant disagrees and contends that the ALJ's decision is free of error and supported by substantial evidence.

The Court has considered the parties' submissions and the relevant portions of administrative record.

DISCUSSION

Plaintiff maintains that the ALJ committed reversible error when evaluating the persuasiveness of LMHC Craig's opinion.   In this regard, it is undisputed that under the regulations applicable to Plaintiff's claim, LMHC Craig is a "medical source," which means the ALJ was required to evaluate the persuasiveness of her opinion consistent with the requirements of 20 CFR § 416.920c. *See*, 20 CFR § 416.902(i) ("Medical source means an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law, or an individual who is certified by a State as a speech-language pathologist or a school psychologist and acting within the scope of practice permitted under State or Federal law."); *see also, Mallorie M. v. Comm'r of Soc. Sec*., No. 321CV891MADATB, 2022 WL 19078137, at *7 (N.D.N.Y. Dec. 22, 2022) ("As a licensed mental health counselor providing a mental health opinion, LMHC Danner is "an individual who is licensed as a healthcare worker by a state working within the scope of practice permitted by State or Federal law," and the ALJ had to consider the persuasiveness of his opinion consistent with the requirements of 20 C.F.R. § 416.920c.") (citations omitted), *report and recommendation adopted*, No.

321CV00891MADATB, 2023 WL 2563209 (N.D.N.Y. Mar. 17, 2023); 20 CFR § 416.920c(a) ("When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate.").

The basic legal principles concerning an ALJ's duty to evaluate the persuasiveness of medical opinions are clear:

> The two "most important factors" for determining the persuasiveness of medical opinions are consistency and supportability, and an ALJ is required to "explain how [he] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. § 416.920c(b)(2).
>
> With regard to "supportability," the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). The regulations provide that with regard to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. 416.920c(c)(2).
>
> ***
>
> An ALJ's failure to explain the supportability and consistency of the medical opinions in the record constitutes procedural error. *See Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019); *Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, *2 (2d Cir. June 17, 2022) (summary order) (finding that "the ALJ committed procedural error by failing to explain how it considered the supportability and consistency of medical opinions in the record"). [7]

---

[7] The Second Circuit has indicated that an ALJ should provide some degree of explanation on these points beyond merely indicating, for example, that he or she finds that an opinion is, or is not, well supported or consistent with the record. *See, Loucks v. Kijakazi*, 2022 WL 2189293 at *2 ("Here, the ALJ committed procedural error by failing to explain how it considered the supportability and consistency of

However, "if 'a searching review of the record' assures [the court] 'that the substance of the [regulation] was not traversed,'" the court may affirm the Commissioner's decision. *Loucks*, 2022 WL 2189293, at *2 (quoting *Estrella*, 925 F.3d at 96 (*quoting Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004))).

*Jason A. L. v. Comm'r of Soc. Sec.*, No. 521CV477FJSTWD, 2022 WL 4354363, at *2 (N.D.N.Y. Sept. 20, 2022).

Additionally, where an ALJ makes an RFC finding that conflicts with a medical opinion, the ALJ must explain why the conflicting opinion was not adopted, and in doing so the ALJ cannot ignore or mischaracterize evidence. *See*, Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996) ("The RFC assessment must always consider and address medical source opinions. *If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted*.") (emphasis added).

Generally, an ALJ must reconcile discrepancies between his or her RFC assessment and medical source statements. SSR 96-8p, 1996 WL 374184, at *7; *see Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 297 (W.D.N.Y. 2006). "If the ALJ's RFC finding conflicts with an opinion from a medical source, the ALJ 'must explain why the opinion was not adopted.'" *Williams v. Colvin*, No. 13-roncv-5431 (RLE), 2015 WL 1223789, at *8 (S.D.N.Y. Mar. 17, 2015) (quoting SSR 96-8p); *accord Garcia v. Berryhill*, No. 17-cv-10064 (BCM), 2018 WL 5961423, at *11 (S.D.N.Y. Nov. 14, 2018). While an "ALJ is not required to explicitly reconcile every conflicting shred of evidence in the record, an ALJ cannot simply selectively choose evidence in the record that supports [his] conclusions." *Williams*, 2015 WL 1223789, at *8 (cleaned up); *see also Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (an ALJ may not "arbitrarily substitute his own judgment for competent medical opinion").

---

medical opinions in the record.  . . .  [T]he ALJ did not address the opinion's supportability or explain how the opinion was consistent with the record, except to conclude that it was.") (emphasis added).

*Lynch v. Commissioner*, No. 22CIV5620CSAEK, 2024 WL 728483, at *11 (S.D.N.Y. Feb. 21, 2024); *see also, Blash v. Comm'r of Soc. Sec. Admin*., 813 F. App'x 642, 644 (2d Cir. 2020) ("The ALJ is obligated to consider "'all of the relevant medical and other evidence.'" *Genier v. Astrue*, 606 F.3d 46, 50 (2d Cir. 2010) (quoting 20 C.F.R. § 404.1545(a)(3)). An ALJ's failure to consider relevant evidence is grounds for remand. *See id*.; *see also Kohler v. Astrue*, 546 F.3d 260, 268-69 (2d Cir. 2008) (concluding that ALJ erred by tending to "overlook or mischaracterize" portions of evidence that supported disability finding).").

And, of course, an ALJ is not permitted to "cherry pick" evidence that supports his RFC finding. *See, Bohart v. Astrue*, No. 10-CV-6503, 2011 WL 2516413, at *5 (W.D.N.Y. June 23, 2011) ("An ALJ cannot selectively choose the only portions of a medical opinion that support his determination, while ignoring others.") (citations omitted).

> Cherry-picking can be defined as "inappropriately crediting evidence that supports administrative conclusions while disregarding differing evidence from the same source." *Artinian v. Berryhill*, No. 16-cv-4404 (ADS), 2018 WL 401186, at *8 (E.D.N.Y. Jan. 12, 2018). Cherry-picking can "indicate a serious misreading of evidence, failure to comply with the requirement that all evidence be taken into account, or both." *Id*. (quoting *Younes v. Colvin*, No. 1:14-cv-170, 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015)). But an allegation of cherry-picking is "seldom successful because crediting it would require a court to re-weigh record evidence." *DeLong v. Comm'r of Soc. Sec*., 748 F.3d 723, 726 (6th Cir. 2014). Indeed, what a claimant may label as cherry-picking can often be described "more neutrally as weighing the evidence." *White v. Comm'r of Soc. Sec*., 572 F.3d 272, 284 (6th Cir. 2009).

*Lisa T. v. Kijakazi*, No. 3:20-CV-1764 (SVN), 2022 WL 2207613, at *3 (D. Conn. June 21,

2022).[8]   Certainly, however, remand may be appropriate where a plaintiff demonstrates that an ALJ engaged in cherry picking or otherwise mischaracterized evidence. *See, Jackson v. Kijakazi*, 588 F. Supp. 3d 558, 585 (S.D.N.Y. 2022) ("Courts frequently remand an ALJ's decision when it ignores or mischaracterizes medical evidence or cherry-picks evidence that supports his RFC determination while ignoring other evidence to the contrary."); *Vanessa N. v. Comm'r of Soc. Sec.*, No. 1:23-CV-00913 EAW, 2024 WL 4131242, at *3 (W.D.N.Y. Sept. 9, 2024) ("Courts frequently remand an ALJ's decision when it ignores or mischaracterizes medical evidence or cherry-picks evidence that supports his RFC determination while ignoring other evidence to the contrary.").

Turning to Plaintiff's specific arguments, he contends first that "[t]he ALJ effectively rejected the opinion of LMHC Craig as being of 'limited persuasion.'"[9]  However, it should be recalled that the ALJ's finding in that regard was largely based on the undisputed fact that Craig declined to provide *any* opinion as to Plaintiff's ability to perform most of the mental requirements of work. Tr. 1359, 1361.   As for the opinions Craig offered --that Plaintiff would be "seriously limited" in interacting appropriately with the public and maintaining socially-appropriate behavior-- the ALJ did not "reject" them altogether, but,

---

[8] *See also, Estrella v. Berryhill*, 925 F.3d 90, 97 (2d Cir. 2019) (Observing that some impairments, such as depression, may have symptoms that wax and wane, and that, "in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working. *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014); *see also Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008) ("A person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days.... Suppose that half the time she is well enough that she could work, and half the time she is not. Then she could not hold down a full-time job."). When viewed alongside the evidence of the apparently cyclical nature of Estrella's depression, the ALJ's two cherry-picked treatment notes do not provide 'good reasons' for minimalizing Dr. Dron's opinion.").
[9] Pl. Memo of Law, ECF No. 9-1 at p. 16.

rather, found that they were "somewhat consistent" with the other psychiatric records, though he found that the record overall supported only "moderate" limitations in those functions.    Consequently, rather than rejecting Craig's opinion, it is more accurate to say that the ALJ found Craig's opinion unpersuasive only insofar as it assessed more-than-moderate limitations in the two areas of functioning she assessed.

Plaintiff nevertheless maintains that the ALJ erred, since he "did not assess the supportability factor" when evaluating Craig's opinion.    On this point, Plaintiff states in pertinent part:

> The ALJ first concluded that "the correlating clinical mental status examinations from Endeavors do not support serious limitations, as [Plaintiff] presents with grossly normal psychiatric findings upon examinations aside from fluctuating mood and affect." (Tr. 1075). Beyond this statement, the ALJ makes no attempt to compare LMHC Craig's opinion to her treatment notes for Plaintiff. The ALJ ignored how LMHC Craig's opinion is actually supported by her treatment notes. LMHC Craig's treatment notes show that Plaintiff had problems with frequent mood swings, anger outbursts, anxiety, and irritability.

ECF No. 9-1 at p. 18 (emphasis added); *see also, id*. at pp. 18-19 (describing entries in Craig's treatment notes that purportedly "support [her] opinion regarding serious limitation with interacting with others and maintaining socially appropriate behavior.").

However, Plaintiff's contention that the ALJ "did not assess the supportability factor" is inaccurate.    While it is true that the ALJ did not use the word "supportability" in his discussion of Craig's opinion, he instead stated that Craig's treatment notes, and particularly her mental status examinations, "do not support" Craig's opinion, which is an assessment of the supportability of the opinion. *See*, Tr. 1075 ("[T]he correlating clinical

mental status examinations from Endeavors do not support serious limitations[.]"). Accordingly, the ALJ addressed the supportability of Craig's opinion.

Indeed, Plaintiff's argument on this point is really that the ALJ's supportability analysis is erroneous and/or deficient since it relied on Craig's largely-normal mental status examination findings while "ignor[ing] how LMHC Craig's opinion is actually supported by her treatment notes."   Plaintiff maintains, in particular, that the ALJ ignored that "LMHC Craig's treatment notes show that Plaintiff had problems with frequent mood swings, anger outbursts, anxiety, and irritability." ECF No. 9-1 at p. 18.[10]

However, the Court does not agree that the ALJ ignored entries in Craig's treatment notes that supported her opinion.   To begin with, as discussed earlier, an ALJ is not required to discuss every piece of evidence, and the fact that the ALJ's decision does not mention a particular piece of evidence does not mean the evidence was not considered. *Banyai*, 767 F. App'x at 177.

Nevertheless, the ALJ did, in fact, consider the evidence.   On this point, the portions of Craig's notes that Plaintiff claims the ALJ ignored are those in which Craig recorded Plaintiff's subjective statements to her about his problems controlling his anger, getting along with people, etc. *See*, Pl. Memo of Law, ECF No. 9-1 at p. 18 ("The ALJ ignored how LMHC Craig's opinion is actually supported by her treatment notes.   LMHC Craig's treatment notes show that Plaintiff had problems with frequent mood swings,

---

[10] Defendant disagrees and maintains that the ALJ "properly applied" the supportability factor when assessing the persuasiveness of Craig's opinion. ECF No. 11-1 at p. 6.   In particular, Defendant disputes Plaintiff's contention that the ALJ ignored evidence in the treatment notes that supported Craig's opinion, and points out instances in which the ALJ discussed such evidence. *See, e.g.*, ECF No. 11-1 at pp. 19

anger outbursts, anxiety and irritability.").    Indeed, Craig did not purport to base her opinions on her own personal observations of Plaintiff's alleged inability to get along with people or to behave appropriately, but, rather, merely repeated what Plaintiff related to her.   Indeed, as noted earlier, when asked to explain the basis for her opinions, Craig stated: "Client has a history of antisocial and aggressive behavior in the community." Tr. 1360.   Nevertheless, the ALJ specifically discussed those treatment notes, including Plaintiff's subjective complaints therein about those very same problems. Tr. 1073.[11]

The ALJ noted, though, that Craig's own observations were that Plaintiff routinely "present[ed] with grossly normal psychiatric findings upon examination aside from fluctuating mood and affect," which, the ALJ found, did not support Craig's opinion that Plaintiff would have "serious limitations" interacting appropriately with people and maintaining socially appropriate behavior. Tr. 1075.   This was not improper, especially since elsewhere in his decision the ALJ found that Plaintiff's subjective complaints about his mental limitations were not entirely consistent with the other evidence of record, including Plaintiff's own statements about his activities of daily living, Tr. 1071-1074. *See, David C. v. Comm'r of Soc. Sec.*, No. 6:23-CV-06510-CJS, 2024 WL 4347151, at *18 (W.D.N.Y. Sept. 30, 2024) ("[A]lthough it is perfectly acceptable for a medical provider to base a mental diagnosis on a patient's subjective complaints, it was appropriate for the ALJ to consider, when evaluating the supportability and consistency of Jack's opinions, that such opinions appeared to be based heavily on Plaintiff's own descriptions of his

---

[11]  *See*, Tr. 1073 (ALJ's discussion of treatment notes from Endeavor Health Services, where Craig was employed.).

symptoms, which were not consistent with many of Jack's own reported observations[.]")
(citations omitted).

In sum, the Court does not agree that the ALJ erred when evaluating the
supportability of Craig's opinion, either by ignoring evidence that supported such opinion
or by finding that Craig's largely-normal mental status examination findings detracted from
the persuasiveness of the opinion.

Plaintiff, though, contends that the ALJ also erred when evaluating the consistency
of Craig's opinion, by again overlooking evidence that was consistent with the opinion,
and instead comparing the opinion to the opinions of non-treating medical sources:

> The ALJ also rejected LMHC Craig's opinion, because it 'is not consistent
> with the opinion of the ME Dr. Wargel or the other opinions in the file.' (Tr.
> 1075).  In reaching this conclusion regarding the consistency factor, the
> ALJ took no other treatment records and simply compared LMHC Craig's
> opinion to the other medical opinions.  He did not analyze how LMHC
> Craig's opinion is consistent with the other record evidence.

ECF No. 9-1 at p. 19.  Similar to his argument concerning the supportability factor,
Plaintiff contends that the ALJ's consistency evaluation is flawed since it overlooked
evidence, consisting primarily of statements that Plaintiff made to treatment providers
about his symptoms along with some reported instances in which Plaintiff displayed angry
or irritable moods. *See*, ECF No. 9-1 at pp. 19-21; *see also*, *Id*. at 20 ("[H]e exhibited an
irritable, agitated and angry mood with a blunted, constricted and flat affect.").

However, insofar as Plaintiff claims the ALJ erred by overlooking or ignoring
evidence that was consistent with Craig's opinion, the Court again disagrees, for the same
reasons discussed earlier in connection with the supportability finding.   Namely, although

21

the ALJ did not mention other evidence besides the other medical opinions when discussing the consistency of Craig's opinion, an ALJ is not required to discuss every piece of evidence considered, and, in any event, the ALJ included a thorough discussion of the mental-health-treatment evidence, including Plaintiff's self-reported symptoms and occasional abnormal mental status exam findings, earlier in his opinion. Tr. 1071 *et seq*. The ALJ found, however, that Plaintiff's subjective complaints to his treatment providers were not entirely consistent with his other statements about his activities of daily living. The ALJ nevertheless included moderate limitations in the RFC to address Plaintiff's complaints and the findings made by the providers, which indicates that the ALJ considered the treatment notes. *See, e.g.*, Tr. 1075 ("[The correlating clinical mental status examinations from Endeavors do not support *serious* limitations, as he presents with grossly normal psychiatric findings upon examinations *aside from fluctuating mood and affect*.") (emphasis added).   In sum, the record indicates that the ALJ considered the evidence Plaintiff cites, but found that it was consistent with only moderate limitations, rather the serious limitations assessed by Craig.   Consequently, the contention that the ALJ ignored or cherry-picked evidence when evaluating the consistency of Craig's opinion lacks merit.

Plaintiff alternatively maintains that the ALJ's consistency evaluation was erroneous, purportedly since the ALJ "did not adequately justify his reliance on the medical expert's testimony over Plaintiff's treatment provider." ECF No. 9-1 at p. 21; *see also, id*. ("The ALJ improperly pitted LMHC Craig's opinion against the testimony of the medical expert.").   In this regard, Plaintiff contends that the ALJ should have relied more

heavily on Craig's opinion, since she examined Plaintiff, whereas the other medical experts did not. *See, id*. at p. 24 ("The ALJ also inappropriately pitted LMHC Craig's opinion against the testimony of the medical expert who never met or examined Plaintiff.").

However, the suggestion that the ALJ was required to give more credence to the opinion of Craig simply because she had examined Plaintiff is incorrect as a matter of law. *See, e.g., Crystal B. v. Comm'r of Soc. Sec*., No. 1:22-CV-356-DB, 2024 WL 3568876, at *12, n. 5 (W.D.N.Y. July 29, 2024) ("[U]nder the revised regulations, the ALJ is no longer required to give special deference to the opinion of a treating physician over and above that of other sources. 20 C.F.R. §§ 404.1520c(a), 416.920c(a)."); *see also, Najah A. v. Comm'r of Soc. Sec*., No. 21-CV-06104-LJV, 2023 WL 4905338, at *3 (W.D.N.Y. Aug. 1, 2023) ("[N]o rule prohibits an ALJ from favoring a prior administrative finding over the opinions of treating or examining sources, see 20 C.F.R. § 416.920c(a)[.]"); *Joseph T. v. Comm'r of Soc. Sec*., No. 22-CV-6209MWP, 2024 WL 3228055, at *5 (W.D.N.Y. June 28, 2024) ("I reject any contention that remand is warranted because the ALJ determined that the opinions authored by the non-examining physicians were more persuasive than the opinion authored by the examining consultant.") (collecting cases).

Additionally, the ALJ's decision to give less weight to Craig's opinion than to the other medical opinions is adequately explained and supported by substantial evidence. *See, e.g.*, ALJ's Decision, Tr. 1075 (Observing that the opinions of Wargel, Santarpia, and Kleinerman were supported by the record as a whole (including Plaintiff's activities

of daily living), consistent with each other, and "offered by a medical expert, medical consultant, and a consultative examiner, [respectively,] all of whom have program knowledge regarding the requirements for proving disability before the Social Security Administration," while the opinion of Craig, who unlike Wargel, did not have access to all the medical records, "provide[d] little by way of vocational or functional analysis" due to having been largely left blank, was not supported by Craig's own "grossly normal psychiatric findings upon examination," and was inconsistent with the other medical opinions insofar as it assessed greater-than-moderate limitations.).

To the extent the Court has not specifically addressed other arguments by Plaintiff, the Court similarly finds them to be without merit.

CONCLUSION

For the reasons discussed above, Plaintiff's motion (ECF No. 9) for judgment on the pleadings is denied, Defendant's cross-motion (ECF No. 11) for the same relief is granted, and this action is dismissed. The Clerk is directed to enter judgment for Defendant and to close this action.

So Ordered.

Dated: Rochester, New York
    March 6, 2025

ENTER:

_Charles J. Siragusa_
CHARLES J. SIRAGUSA
United States District Judge

24